IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREA MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-CV-02782-MAB |
| | ) |
| TRANSAMERICA LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Presently before the Court is Defendant Transamerica Life Insurance Company's motion to dismiss and supporting memorandum (Docs. 22, 23). For the reasons set forth below, the motion to dismiss is GRANTED.

### BACKGROUND

Decedent Neil David Haake ("Neil Haake"), Plaintiff's father, was issued a life insurance policy from Transamerica Life Insurance in February 1986 (Doc. 20 at p. 1). Neil Haake designated his then-wife, Jill L. Haake (Plaintiff's mother), as the policy's primary beneficiary and Plaintiff was named as the contingent beneficiary (*Id.*). One year later, the marriage between Neil Haake and Jill Haake was dissolved. (*See Id.* at pp. 6-7).

Neil Haake passed away in September 2021 (*Id.* at p. 1). In May 2022, notice of Neil Haake's death was sent to Transamerica (*Id.* at p. 8). The notice also informed Transamerica of Neil Haake's divorce and stated the proceeds of his life insurance should be paid to Plaintiff (*Id.*). Nonetheless, Transamerica paid Neil Haake's life insurance

benefits to Jill Haake in September 2022 (*Id.* at p. 2).

Plaintiff initially filed this action in state court (*See* Doc 1, Ex. 1). Transamerica then removed the case to federal court (Doc. 1). On April 5, 2023, Plaintiff filed her first amended complaint (Doc. 20). As specified in the complaint, Plaintiff seeks a declaration that she is entitled to the proceeds of Neil Haake's life insurance policy and damages in the amount of the policy plus interest (*Id.* at pp. 2-3). On April 19, 2023, Transamerica filed the instant motion to dismiss (Doc. 22) and memorandum in support (Doc. 23). Plaintiff filed a response in opposition on May 2, 2023 (Doc. 24). Defendant filed a reply in support on May 16, 2023 (Doc. 25).

## LEGAL STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor. *E.g., Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 512–13 (7th Cir. 2020). However, "legal conclusions and conclusory allegations . . . are not entitled to this presumption of truth." *Dix*, 978 F.3d at 513 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S, 555, 557 (2007)). "[W]hile a complaint does not need 'detailed factual allegations' to survive a 12(b)(6) motion to dismiss, it must allege sufficient facts 'to state a claim to relief that is plausible on its face.'" *Dix*, 978 F.3d at 512–

13 (quoting *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014)).

## DISCUSSION

Transamerica moves to dismiss Plaintiff's first amended complaint with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Transamerica contends Plaintiff's claim of entitlement to Neil Haake's life insurance pursuant to a recently amended Illinois statute was addressed and rejected by the Illinois Appellate Court in an analogous case, *Shaw v. U.S. Fin. Life Ins. Co.*, 2022 IL App (1st) 211533. Consequently, Transamerica argues Plaintiff's action must be dismissed because her claims fail as a matter of law.

**I.      Overview of 750 ILCS 5/503(b-5) and *Shaw v. U.S. Fin. Life Ins. Co.*:**

In 2018, the Illinois legislature passed Public Act 100-871, which amended section 503 of the Illinois Marriage and Dissolution of Marriage Act (the "Act"). *See* 750 ILCS 5/503(b-5) (eff. Jan. 1, 2019). The amended section of the Act provides:

> (b-5)(1) As to any existing policy of life insurance insuring the life of either spouse, or any interest in such policy, that constitutes marital property, whether whole life, term life, group term life, universal life, or other form of life insurance policy, and whether or not the value is ascertainable, the court shall allocate ownership, death benefits or the right to assign death benefits, and the obligation for premium payments, if any, equitably between the parties at the time of the judgment for dissolution or declaration of invalidity of marriage.
>
> (2) If a judgment of dissolution of marriage is entered after an insured has designated the insured's spouse as a beneficiary under a life insurance policy in force at the time of entry, the designation of the insured's former spouse as beneficiary is not effective unless:
>
>> (A) the judgment designates the insured's former spouse as the

>>beneficiary;
>
>>(B) the insured redesignates the former spouse as the beneficiary after entry of the judgment; or
>
>>(C) the former spouse is designated to receive the proceeds in trust for, on behalf of, or for the benefit of a child or a dependent of either former spouse.
>
>(3) If a designation is not effective under paragraph (2), the proceeds of the policy are payable to the named alternative beneficiary or, if there is not a named alternative beneficiary, to the estate of the insured.

*Id.*[1]

Significantly, as Plaintiff concedes in her response, the Illinois Appellate Court recently addressed the Act's amendments in a case that involved the same issue and order of events. *See Shaw v. U.S. Fin. Life Ins. Co.*, 2022 IL App (1st) 211533. Tyrone Shaw ("Tyrone") and Beverly Shaw ("Beverly") married in 1991. *Id.* at ¶ 3. In 2004, U.S. Financial Life Insurance Company issued a life insurance policy to Tyrone. *Id.* at ¶ 4. Beverly was named as the policy's primary beneficiary and "all children of insured" were listed as contingent beneficiaries. *Id.* In 2016, the marriage between Tyrone and Beverly was dissolved. *Id.* at ¶5. Notably, the dissolution judgment was silent regarding Tyrone's life insurance policy. *Id.*

---

[1] Section 503(b-5)(4) of the Act is crucial to Plaintiff's underlying claim against Defendant. That section provides:
>(4) An insurer that pays the proceeds of a life insurance policy to the beneficiary under a designation that is not effective under paragraph (2) is liable for payment of the proceeds to the person or estate provided by paragraph (3) only if:
>>(A) before payment of the proceeds to the designated beneficiary, the insurer receives written notice at the home office of the insurer from an interested person that the designation is not effective under paragraph (2); and
>>(B) the insurer has not filed an interpleader.

Tyrone passed away in 2020, over a year after the amendments to the Act became effective. *Id.* at ¶ 7. At that point, Beverly submitted a claim under the policy as the primary beneficiary. *Id.* Although U.S. Financial acknowledged the policy was valid, it refused to pay Beverly based upon the recent amendments to the Act. *Id.* Beverly filed suit for a declaratory judgment that she was entitled to the proceeds because the Act was not in effect at the time of the dissolution judgment. *Id.* at ¶ 8. The circuit court agreed, finding the Act could not be applied retroactively and Beverly was entitled to the funds because the dissolution judgment occurred before the Act's amendments. *Id.* at ¶ 13. One of Tyrone's sons appealed. *Id.* at ¶ 16.

On appeal, the sole question for the Illinois Appellate Court was "whether the 'operative act' triggering the application of the statute is the entry of the dissolution judgment or Tyrone's death." *Id.* at ¶ 35. The court began its analysis by considering the Act's plain language. *Id.* at ¶¶ 36-39. Although the court found the language of the Act itself did not provide clear guidance as to what constituted the "operative act," the court emphasized that the Act dealt with marriage and dissolution proceedings. *Id.* at ¶ 38. The court also highlighted the Act's use of the present tense, reasoning that "[t]he [Act's] use of the present tense further supports an interpretation that the statute applies at the time of the dissolution proceeding, not at some later time." *Id.* Next, the court examined Illinois caselaw that considered the effect of dissolution proceedings on wills, finding that "while the argument that a beneficiary's interest vests only upon death has some surface appeal, this argument is one that our supreme court has repeatedly rejected in the context of wills and the same reasoning would apply here." *Id.* at ¶ 49.

Finally, the court considered foreign caselaw and found it readily distinguishable. *Id.* at ¶¶ 44-47. Specifically, the court stated that although most foreign courts hold the "operative act" to be the insured's death, those decisions relied upon statutes modeled after the Uniform Probate Code. *Id.* at ¶ 46. Tellingly, the Uniform Probate Code includes a provision that states any rule of construction or presumption also applies to instruments executed prior to the statute's effective date absent a clear indication to the contrary. *Id.* In contrast, "[t]he statute at issue in the case at bar does not contain such a provision, so [the foreign] cases are of limited utility to our analysis." *Id.* Accordingly, the court held, "[e]xamining the language of the statute at issue in the instant case, and interpreting it in light of the cases discussed above, we must find that the operative act triggering application of the statute is the date of the dissolution judgment, not the date of Tyrone's death." *Id.* at ¶ 49. In other words, even after their divorce, Beverly remained the primary beneficiary of Tyrone's life insurance because the date of their dissolution judgment predated the Act's amendments. *Id.*

## II.  There is no convincing reason to believe the Illinois Supreme Court would disagree with *Shaw.*

In the present case, Plaintiff concedes *Shaw* is directly on point and adverse to her position (Doc. 24 at p. 1). However, Plaintiff argues *Shaw* was wrongly decided and not indicative of how the Illinois Supreme Court would rule on the topic. It's clear that Plaintiff's claim cannot succeed if *Shaw* is followed, thus the Court's sole task is to determine whether there are any convincing reasons to believe the Illinois Supreme Court

would disagree with the Appellate Court's holding in *Shaw*.²

"When the state Supreme Court has not decided the issue, the rulings of the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001). In other words, "a federal court applying state law should apply the law *as announced by intermediate state courts unless* there are reasons that convince the federal court that the state's high court would rule differently." *In re: Emerald Casino, Inc.*, 867 F.3d 743, 765 (7th Cir. 2017) (emphasis added); *see also West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940) ("Where an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."). Here, the Court finds no convincing reason to believe the Illinois Supreme Court would decide the issue differently.

First, as detailed above, *Shaw* is well reasoned and relies on several convincing justifications for its holding. As the *Shaw* Court explained, the statute's tense, overall scheme, and distinctions from provisions in the Uniform Probate Code all support the court's holding. Moreover, the *Shaw* Court's reliance on prior, similar Illinois Supreme Court caselaw regarding wills further bolsters its conclusion. As the *Shaw* Court astutely stated, there is no compelling reason to believe the Illinois Supreme Court would choose

---

² The losing party in *Shaw* did not file a petition for rehearing or petition for leave to appeal to the Illinois Supreme Court.

to analyze the issue differently when considering life insurance as opposed to wills. *See generally Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) (rulings by the Supreme Court of Indiana on a similar issue provide guidance on how the court would likely rule); *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir. 1998) (explaining that federal courts may consider the "rationales and analyses underlying [state] Supreme Court decisions on related issues," when considering how a state supreme court would likely rule). Furthermore, the *Shaw* Court appropriately distinguished the Act's amendment from statutes in other states because the Act does not contain a provision providing for its amendments to apply to documents already in effect. *See, e.g., Stillman v. Tchrs. Ins. & Annuity Ass'n Coll. Ret. Equities Fund*, 343 F.3d 1311, 1317-18 (10th Cir. 2003) (applying a revocation-upon-divorce provision to preexisting documents due to a statutory provision allowing for such a construction).

Additionally, the Court is not persuaded by Plaintiff's argument that two legislative statements display the legislature's intent for the Act's amendments to apply in her situation.[3] *See Shaw*, ¶ 33. The two legislative statements Plaintiff references merely indicate why those two specific legislators desired the Act's amendments to be passed. These two statements cannot be said to represent the legislature's intent – as a whole –

---

[3] Specifically, Senator Chuck Weaver described the Act's amendments as "ensur[ing] that a person going through a divorce isn't penalized for forgetting about an old insurance policy[.]" *Shaw*, ¶ 33 (quoting 100th Ill. Gen. Assem., Senate Proceedings, Apr. 11, 2018, at 39). Similarly, Representative Andersson stated the amendments "provide for what happens in the even of the dissolution of marriage and after the dissolution a spouse fails to correct who the beneficiaries are on the life insurance policy." *Id.* (quoting 100th Ill. Gen. Assem., House Proceedings, May 21, 2018, at 37).

for the Act's amendments to apply in this situation.[4] *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 385 (2012) ("First, the views of a single legislator, even a bill's sponsor, are not controlling."); *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1053 (7th Cir. 2013) ("First and foremost, the comments of individual senators do not necessarily reflect Congress's intent in enacting any particular piece of legislation.").

Furthermore, the United States District Court for the Southern District of Illinois has already followed *Shaw* in *State Farm Ins. Co. v. Haas*, 2022 WL 17986565 (S.D. Ill. Case No. 22-cv-02704-NJR). In *Haas*, the insured named his then-wife as the primary beneficiary of his life insurance before their marriage was dissolved in 1985. *Id.* at *2. The insured never changed his life insurance's beneficiary designations following the divorce and he passed away in December 2020. *Id.* The court relied extensively on *Shaw* in determining that "it appears the Act is inapplicable, and [insured's former wife] is entitled to the life insurance proceeds." *Id.* at * 4.[5]

In conclusion, based upon the numerous compelling justifications for the Appellate Court's holding in *Shaw*, the Court is not persuaded that the Illinois Supreme Court would reverse *Shaw*. Therefore, because *Shaw* is fatal to Plaintiff's arguments, Plaintiff's claim is dismissed for failure to state a claim upon which relief can be granted.

---

[4] A less deferential reading of the legislators' statements may even undercut Plaintiff's argument and further support the argument that the legislature only intended for the Act's amendments to apply to future divorces. For instance, when discussing the benefits of the Act's amendments, Senator Weaver used the phrase, "going through a divorce," as opposed to a past-tense phrase such as, "having went through a divorce." *Id.*

[5] Moreover, the Court is not persuaded by Plaintiff's argument that Haas should be disregarded because *Haas* involved an interpleader action and did not include any relevant counterargument. Regardless of the procedural posture in *Haas*, the Court still analyzed *Shaw* at length and found the case to be persuasive. *Haas*, 2022 WL at *2-4.

Typically, after granting a motion to dismiss, the Court would allow an opportunity for leave to amend. But here, given the undisputed order of events in this case and Plaintiff's admissions regarding the significance of *Shaw*, it is manifestly clear that leave to amend would be futile. Accordingly, the Court's dismissal must be with prejudice.

## CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss (Doc. 22) is **GRANTED.** Plaintiff's action is **DISMISSED** in its entirety **with prejudice**.

**IT IS SO ORDERED.**

**DATED: July 18, 2023**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
